# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JENNIFER SCHONE,        )<br>    Plaintiff,        )<br>        )<br>v.        )<br>        )<br>AUTOMOBILE CLUB        )<br>INTER-INSURANCE EXCHANGE,        )<br>    Defendant.        )<br>_____        )<br>        )<br>AUTOMOBILE CLUB        )<br>INTER-INSURANCE EXCHANGE,        )<br>    Plaintiff and Counterdefendant,        )<br>        )<br>        )<br>v.        )<br>        )<br>DEBORAH BALLARD,        )<br>    Defendant and Counterclaimant.        )  | Case No. 14-2156-KGS<br><br><br><br><br><br><br><br><br><br><br><br><br>Case No. 14-2186-KGS |

## MEMORANDUM AND ORDER

This matter comes before the court upon Automobile Club Inter-Insurance Exchange's (ACIIE) Motions for Summary Judgment Against Jennifer Schone and Deborah Ballard (ECF Nos. 32 and 34) and upon Ms. Schone and Ms. Ballard's Motion for Partial Summary Judgment (ECF No. 36). For the reasons stated below, these motions are granted in part and denied in part.

**I.     Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."[1] A fact is "material" if it is "essential to the proper disposition of the claim."[2] An issue of fact is "genuine"

---

[1] Fed. R. Civ. P. 56(a).

[2] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[3] The court views the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.[4]

The legal standard for summary judgment does not change if the parties file cross-motions for summary judgment. "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."[5] "To the extent the cross-motions overlap, however, the court addresses the legal arguments together."[6] Each party moving for summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact and the entitlement to a judgment as a matter of law.[7] To meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the claims of the opposing party; instead, the moving party can simply point out the absence of evidence for the other party on an essential element of that party's claim.[8]

If the movant carries this initial burden, the burden shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial."[9] The nonmovant may not rest on

---

[3] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248).

[4] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[5] *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979); Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720, at 464 (1973).

[6] *Tri–State Truck Ins., Ltd. v. First Nat'l Bank of Wamego*, No. 09–4158–SAC, 2011 WL 3349153, at *1 (D. Kan. Aug. 3, 2011).

[7] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

[8] *See Celotex*, 477 U.S. at 323; *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

[9] *Anderson*, 477 U.S. at 256; *see also Adler*, 144 F.3d at 671 n.1 (discussing burden shifting for a motion for summary judgment).

mere allegations or denials of its pleading.[10] Rather, the nonmovant must give "specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11] "Conclusory and self-serving affidavits are not sufficient" to show disputed material facts.[12] In addition, the nonmovant cannot rely "on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."[13]

## II.  Facts

Before setting forth the facts, the court must take up AIICE's objection to the use of Ms. Ballard's sworn statement on the grounds that it is being offered as a prior out-of-court consistent statement, which is inadmissible because it is hearsay.[14] At the summary judgment stage, the content or substance of any evidence relied upon must be admissible, but the evidence need not be submitted in a form that would be admissible at trial.[15] Fed. R. Civ. P. 56(c)(1)(A) permits a party to support its factual assertions by means of a deposition transcript or affidavit, even though these are forms of evidence that may be inadmissible as hearsay at trial.[16] The rationale is that the same facts may ultimately be presented at trial in an admissible form—for

---

[10] *Anderson*, 477 U.S. at 256.

[11] *Adler*, 144 F.3d at 671.

[12] *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

[13] *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citing *Bryant v. O'Connor*, 848 F.2d 1064, 1067 (10th Cir. 1988)).

[14] *See* Automobile Club Inter-Insurance Exchange's Resp. in Opp'n to Pl. Schone's and Def./Countercl. Ballard's Mot. for Partial Summary J. at 7, ECF No. 41.

[15] *Dodson Aviation, Inc. v. HLMP Aviation Corp.*, No. 08–4102–KGS, 2011 WL 1234705, at *8 (D. Kan. Mar. 31, 2011) (citing *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005); *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir.2006)).

[16] *See Dodson*, 2011 WL 1234705, at *8 (citing Fed. R. Civ. P. 56(c)(1)(A); *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010)).

example, through live testimony.[17] Therefore, while conclusory or self-serving affidavits are not sufficient to escape summary judgment, the court will not bar evidence that could be presented at trial in an admissible form. Here, Ms. Ballard's sworn statement does not conflict with her subsequent deposition testimony, and if this case proceeds to trial, Ms. Ballard would likely testify in person. Moreover, other evidence already raises material issues of fact to which there is a genuine dispute. In other words, even if the court were to disregard entirely Ms. Ballard's sworn statement, this would not alter the court's ruling on the summary judgment motions. For these reasons, the court overrules AIICE's objection to the use of Ms. Ballard's sworn statement. Where appropriate, the court has relied on Ms. Ballard's sworn statement in the recitation of the facts below.

On the night of October 12, 2012, Ms. Schone was driving her 2007 Chevrolet Impala with Ms. Ballard as a passenger in the vehicle at the time the vehicle was involved in an accident on Interstate 335. This portion of the interstate highway consists of two northbound lanes and two southbound lanes. Ms. Schone had been traveling in the right northbound lane behind a truck that was towing an enclosed trailer. The facts surrounding the accident are controverted. Ms. Schone testified the truck and trailer were traveling in the right lane but were swerving into the left lane. She testified that she attempted to pass the truck and trailer in the left northbound lane and saw the truck and trailer sway into her lane. She testified that she then felt a bump on the back of her vehicle, and she subsequently struck the concrete barrier running between the northbound and southbound lanes. She believes the collision occurred because the truck and trailer struck the back of her vehicle.

---

[17] *Trevizo*, 455 F.3d at 1160.

Ms. Ballard's deposition testimony is largely consistent with Ms. Schone's. Ms. Ballard testified that she and Ms. Schone had been traveling behind the truck and trailer for about five minutes prior to the time the accident occurred. Ms. Ballard testified that the weather conditions were misty and that she had witnessed the truck and trailer driving in both lanes of traffic. She testified that when Ms. Schone attempted to pass the truck and trailer, Ms. Ballard witnessed the vehicle coming toward her. Ms. Ballard testified that she had told an ACIIE representative that while she could not definitely state that the truck and trailer had made physical contact with Ms. Schone's vehicle, she had felt a bump.

ACIIE contends Ms. Schone and Ms. Ballard's current position about the alleged collision is contradictory to the report made by the investigating officer, who was on the scene shortly after the accident had occurred. The officer interviewed Ms. Schone and Ms. Ballard. An audio recording captured their conversations—although Ms. Schone and Ms. Ballard contend that portions of the audio recording were either cut off or not audible. As it appears, there is nothing in the transcript of the audio recording showing that Ms. Schone or Ms. Ballard told the investigating officer that the truck and trailer collided with Ms. Schone's vehicle or that the truck and trailer were otherwise the cause of the collision. The investigating officer later drafted the Kansas Motor Vehicle Accident report, which does not mention that Ms. Schone or Ms. Ballard reported to him any physical contact between Ms. Schone's vehicle and the truck and trailer. Both women gave deposition testimony stating that they believed the accident report accurately reflected what they had relayed to the officer, with the exception that Ms. Schone believed the report's statement regarding the speed of her vehicle was inaccurate.

David Thompon's vehicle was traveling behind Ms. Schone's vehicle prior to the accident. Mr. Thompson testified that his vehicle was approximately 10 seconds behind Ms.

Schone's vehicle and the tractor and trailer, which he estimates would have been about a fourth of a mile. Mr. Thompson recalled that Ms. Schone's vehicle went into the left lane to go around the truck and trailer. Mr. Thompson testified that at some point, he saw the trailer's brake lights come on and then he saw lights flash across the overpass, which he believed to be the headlights of Ms. Schone's Impala, spinning out of control. Mr. Thompson then saw Ms. Schone's vehicle on the side of the road and pulled his car over to assist. Mr. Thompson's testimony is consistent with a previously submitted affidavit, which states,

> I did not witness any physical contact between the Impala and any other vehicle and cannot say what caused the Impala to lose control because I could not see it for a period of time as it traveled around the curve in the road. I could not see anything that would allow me to say that any other vehicle was not following the rules of the road or caused the Impala to lose control.[18]

Mr. Thompson also testified that the truck and trailer also pulled over to the right side of the road after the accident. According to Mr. Thompson, an individual exited the vehicle and began walking toward him. Mr. Thompson testified that the individual was summoned back to his vehicle by another person and that the truck and trailer left the scene before law enforcement and medical personnel had arrived. Mr. Thompson stayed to assist Ms. Schone and Ms. Ballard. The parties have not located any witnesses other than Ms. Schone and Ms. Ballard who contend there was physical contact between the truck and trailer and Ms. Schone's vehicle.

At the time of the accident, ACIIE Policy No. A1-700437-1 was issued to Ms. Schone and was in effect. Ms. Schone and Ms. Ballard both seek to recover uninsured motorist benefits under the policy, which has coverage limits for uninsured motorist coverage in the amount of $100,000 per person or $300,000 per accident. The parties agree that Ms. Schone and Ms. Ballard both meet the definition of an "insured" for uninsured motorist benefits, and they

---

[18] Aff. of David Thompson at 1, ECF No. 33-1.

sustained "bodily injury" caused by an "auto accident," as defined in the policy. The policy provides that:

> Uninsured motor vehicle means a land motor vehicle or trailer of any type:
>
> 1. to which no bodily injury liability bond or policy applies at the time of the auto accident;
>
> 2. which is a hit and run vehicle whose operator or owner cannot be identified and which hits or causes an auto accident which results in bodily injury without hitting:
>
>    a. you or any household member;
>    b. an auto which you or any household member are occupying; or
>    c. your insured auto.
>
> However, if there is no physical contact there must be reliable, competent evidence to prove the facts of the auto accident from a disinterested witness not making a claim under the policy; or
>
> 3. to which a bodily injury liability bond or policy applies at the time of the auto accident but the bonding or insuring company denies coverage or is or becomes insolvent.
>
> . . .
>
> We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for bodily injury sustained by any person:
>
> 1. Where there is no evidence of physical contact with the uninsured motor vehicle and where there is no reliable, competent evidence to prove the facts of the auto accident from a disinterested witness not making a claim under the policy.[19]

Ms. Schone received $25,000 in personal injury protection (PIP) medical payment benefits from ACIIE through a payment made directly to her. Ms. Ballard received PIP wage-loss benefits from ACIIE in the amount of $6,855.47. ACIIE subsequently paid Ms. Ballard the

---

[19] Insurance Policy at 6-7, ECF No. 37-6.

7

$100,000 liability limit under the policy. The policy provides a setoff regarding the previously paid liability benefits. It states,

> With respect to damages caused by an auto accident with an uninsured motor vehicle, any amounts otherwise payable for damages under this coverage shall be reduced by all sums paid for the same damages under this coverage shall be reduced by all sums paid for the same damages because of the bodily injury by or on behalf of persons or organizations that may be responsible. This includes all sums paid for the damages under Part I [governing liability benefits] of the policy.[20]

### III. Discussion

#### A. ACIIE's Motions for Summary Judgment (ECF Nos. 32 and 34)

All parties agree that Ms. Schone and Ms. Ballard both meet the definition of an "insured" for uninsured motorist benefits, and they sustained "bodily injury" caused by an "auto accident," as defined in the policy.[21] ACIIE argues it is entitled to summary judgment on all of Ms. Schone's and Ms. Ballard's affirmative claims because ACIIE contends they cannot show that the truck and trailer (collectively "the alleged phantom vehicle") meet the definition of an "uninsured vehicle" under the policy. Under the applicable policy provisions cited above and under the facts of this particular case, the policy provides two ways in which Ms. Schone and Ms. Ballard may be entitled to recover uninsured motorist benefits: They must show that the phantom vehicle either (1) hit Ms. Schone's vehicle or (2) caused an auto accident that resulted in bodily injury without hitting Ms. Schone or Ms. Ballard or the vehicle itself. In order to be entitled to uninsured motorist benefits under the second scenario—where no physical contact occurred—"there must be reliable, competent evidence to prove the facts of the auto accident

---

[20] *Id.* at 8.

[21] Pretrial Order at 2-3, ECF No. 31.

from a disinterested witness not making a claim under the policy[.]"[22] K.S.A. 40-284 allows for this limitation of coverage. It states that insurers may exclude or limit coverage under a number of circumstances, including, "when there is no evidence of physical contact with the uninsured motor vehicle and when there is no reliable competent evidence to prove the facts of the accident from a disinterested witness not making a claim under the policy."[23]

As for recovery under the first scenario—a hit-and-run accident involving physical contact between Ms. Schone's vehicle and the phantom vehicle—ACIIE contends it is entitled to summary judgment because Ms. Schone and Ms. Ballard lack evidence showing there was physical contact between Ms. Schone's vehicle and the phantom vehicle. ACIIE also notes that the pretrial order fails to assert physical contact between the two vehicles. The pretrial order states that Ms. Schone and Ms. Ballard allege the unidentified driver of the phantom vehicle was negligent by failing to drive his vehicle in a safe manner including:

> 1). failing to use reasonable care to keep the vehicle under control;
> 
> 2). failing to keep proper lookout for other vehicles and objects in his line of vision that may affect [his] use of the highway;
> 
> 3). failing to operate his vehicles at a speed reasonable under the weather conditions that existed at the time of the collision; and
> 
> 4). failing to operate his vehicle as nearly as practicable entirely within a single lane and hall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.[24]

---

[22] *Id.* at 6.

[23] K.S.A. 40-284(e)(3).

[24] Pretrial Order at 8-10, ECF No. 31.

The pretrial order specifically references a collision. Moreover, the ways in which Ms. Schone and Ms. Ballard allege the driver was negligent could encompass both colliding with Ms. Schone's vehicle or causing Ms. Schone's vehicle to veer off of the interstate. This is also in line with Ms. Schone's state court petition, which alleges the driver of the phantom vehicle "caused a violent collision . . . ."[25] Likewise, Ms. Ballard's counterclaim contains similar language, alleging the driver of the phantom vehicle "caused a violent collision with the vehicle in which [she] was a passenger . . . ."[26] The pleadings in this case have put ACIIE on notice of this theory of recovery.

Material issues of fact also preclude summary judgment on this theory of recovery. ACIIE contends there was no physical contact between the phantom vehicle and Ms. Schone's vehicle. In support, it points to the transcript from the investigating officer's audio recording taken at the scene of the accident,[27] and the officer's subsequent accident report.[28] Neither mention that Ms. Schone or Ms. Ballard told the investigating officer that they believed the phantom vehicle was responsible for or contributed to the accident. Both women testified that the transcript and subsequent report were generally accurate. ACIIE also points to Ms. Ballard's deposition testimony, in which she states that she cannot say with certainty that there was any physical contact between the phantom vehicle and Ms. Schone's vehicle.[29] While this evidence may tend to support ACIIE's position that no physical contact occurred, Ms. Schone and Ms.

---

[25] Pet. for Damages at 4, ECF No. 1-1.

[26] *ACIIE v. Deborah Ballard*, 14-2186-KGS, Def.'s Ans. To Compl. for Declaratory J. and Counter Compl. at 5, ECF No. 5 (now consolidated as noted in the above case caption).

[27] Transcript of Kansas Highway Patrol Video, ECF No. 33-4.

[28] Kansas Motor Vehicle Accident Report, ECF No. 33-5.

[29] Ballard Dep. at 38:7-10, ECF No. 33-6.

10

Ballard both testified that they felt a bump. Specifically, Ms. Shone stated she "was hit, which is what made my car get into an accident."[30] She also testified that she "felt a bump that jarred the car, which made me slide."[31] And even though Ms. Ballard also testified that she could not definitively state whether the phantom vehicle caused the bump, she also stated that the women felt "the back of the car be hit, and that's when we went into the wall, and the truck hit us."[32] This testimony, coupled with Ms. Schone's and Ms. Ballard's testimony about the phantom vehicle's alleged erratic driving prior to the time of the accident, is sufficient evidence from which a rational trier of fact could resolve the issue in their favor. For this reason, the court denies ACIIE's summary judgment motion on the issue of whether Ms. Schone and Ms. Ballard are entitled to uninsured motorist benefits as a result of the phantom vehicle allegedly colliding with Ms. Schone's vehicle.

ACIIE also moves for summary judgment on the second way in which Ms. Schone and Ms. Ballard may recover under the policy—if the phantom vehicle caused the accident without actually making physical contact with Ms. Schone's vehicle. As previously stated, in order to be entitled to uninsured motorist benefits under this scenario, "there must be reliable, competent evidence to prove the facts of the auto accident from a disinterested witness not making a claim under the policy[.]"[33] K.S.A. 40-284(e) authorizes this exclusion in insurance policies, the purpose of which is to prevent fraud.[34]

---

[30] Schone Dep. 8:23-24, ECF No. 33-3.

[31] *Id.* at 63:16-17.

[32] Sworn Statement of Deborah Ballard at 34:1-4, ECF No. 37-3.

[33] Insurance Policy at 6, ECF No. 37-6.

[34] *Cannon v. Farmers Ins. Co., Inc.*, 50 P.3d 48, 56 (Kan. 2002).

ACIIE contends it is entitled to summary judgment on this theory of recovery because Ms. Schone and Ms. Ballard have not come forward with a disinterested witness to prove the facts of the accident. ACIIE argues that Mr. Thompson cannot prove the facts of the auto accident because he has testified that he did not witness the accident and could not say what caused Ms. Schone to lose control of her vehicle. Mr. Thompson submitted an affidavit stating,

> I did not witness any physical contact between the Impala and any other vehicle and cannot say what caused the Impala to lose control because I could not see it for a period of time as it traveled around the curve in the road. I could not see anything that would allow me to say that any other vehicle was not following the rules of the road or caused the Impala to lose control.[35]

He testified consistent with his statements in the affidavit, agreeing that he would be speculating if he were to have an opinion about what caused Ms. Schone's vehicle to lose control.[36] While no party questions that Mr. Thompson is a disinterested witness, Ms. Schone and Ms. Ballard fail to adequately explain how Mr. Thompson could prove the facts of the auto accident. They merely state that his testimony supports the existence of the phantom vehicle, which ACIIE does not contest. They also note that Mr. Thompson stated he witnessed the phantom vehicle's break lights come on and Ms. Schone's vehicle's lights flash across the overpass. Drawing all reasonable inferences in favor of Ms. Schone and Ms. Ballard, this testimony suggests that the phantom vehicle applied its brake and that Ms. Schone's vehicle spun out of control. It does not suggest a causal connection between the two events. Quite simply, while Mr. Thompson may be a disinterested witness to prove the existence of the phantom vehicle, he did not witness anything to prove the facts of the auto accident itself, which the policy requires in order for Ms. Schone and Ms. Ballard to be entitled to uninsured motorist

---

[35] Aff. of David Thompson at 1, ECF No. 33-1.

[36] Thompson Dep. 6:23-7:1, ECF No. 33-7.

benefits under this provision. Because Ms. Schone and Ms. Ballard have failed to come forward with sufficient evidence to support recovery under this provision of the policy, the court grants summary judgment in ACIIE's favor on this theory of recovery.

To summarize, Ms. Ballard and Ms. Schone have presented sufficient evidence to create a triable issue as to whether the phantom vehicle struck their vehicle, which precludes granting summary judgment on the issue of whether Ms. Schone and Ms. Ballard are entitled to uninsured motorist coverage based on that theory of recovery. However, Ms. Schone and Ms. Ballard have failed to come forward with sufficient evidence of a disinterested witness to prove the facts of the accident in which the phantom vehicle caused the accident absent physical contact with Ms. Schone's vehicle. For these reasons, the court grants in part and denies in part ACIIE's summary judgment motion.

### B. Ms. Schone and Ms. Ballard's Motion for Partial Summary Judgment (ECF No. 36)

Ms. Schone and Ms. Ballard move for summary judgment on two of ACIIE's defenses—one being a setoff defense and the other being what Ms. Schone and Ms. Ballard characterize as ACIIE's defense of "lack of physical contact and disinterested witness." As to the lack-of-physical-contact/disinterested-witness "defense," the court recognizes ACIIE listed this as a defense in the pretrial order, but this "defense" is more appropriately characterized as a denial of an element of Ms. Schone's and Ms. Ballard's affirmative claim. Ms. Schone and Ms. Ballard essentially move for summary judgment in their favor on this portion of their affirmative claim for uninsured motorist benefits. For the same reasons stated above when addressing ACIIE's summary judgment motions on this issue, the court holds that Mr. Thompson would not qualify as a disinterested witness to prove the facts of the auto accident itself. Mr. Thompson did not witness the accident, does not know what caused the accident, and did not witness any other

vehicle failing to follow the rules of the road, making summary judgment in ACIIE's favor appropriate as to this theory of recovery.

ACIIE's setoff defense requires more analysis.[37] If Ms. Ballard proves she is legally entitled to recover uninsured motorist benefits, ACIIE seeks a reduction up to the amount of the $100,000 liability payment to Ms. Ballard for the legal liability of Ms. Schone under Part I of the policy.[38] Alternatively, if the court deems the reduction void, ACIIE argues the reduction is void only as to the statutory minimum of $25,000, as set forth in K.S.A. 40-3107, and is enforceable as to the remaining $75,000 of the uninsured motorist limits. The court first addresses whether the setoff provision is void.

K.S.A. 40-284 mandates uninsured motorist coverage. The statute is compulsory, and the Kansas Supreme Court has held that courts should liberally construe the statute to provide "a broad protection to the insured" for damages sustained in an accident involving vehicles considered uninsured motor vehicles.[39] In addition to requiring uninsured motorist coverage, K.S.A. 40-284 also sets forth certain permissible policy exclusions and limitations.[40] But "[a]ny attempts not authorized by statute to condition, limit, or dilute the broad, unqualified mandated uninsured motorist coverage are void and unenforceable."[41]

---

[37] For clarity, the court refers to this position as a defense. The court notes, however, that ACIIE also seeks declaratory judgment on this point. *See* Pretrial Order at 15, ECF No. 31 (stating that ACIIE "seeks a declaratory judgment as to the uninsured motorist claim by Ballard, that Ballard is not entitled to recover on her claim, or that her claim is reduced or limited, in the particulars described in Part 4 [setting forth defenses] above").

[38] *See* Pretrial Order at 14, ECF No. 31.

[39] *Cannon*, 50 P.3d at 51 (quoting *Rich v. Farm Bur. Mut. Ins. Co.*, 824 P.2d 955, 959 (Kan. 1992)).

[40] K.S.A. 40-284(e).

[41] *Cannon*, 50 P.3d at 52 (citing *Allied Mut. Ins. Co. v. Gordon*, 811 P.2d 1112, 1124 (Kan. 1991)).

The parties cite the Kansas Supreme Court's decision in *Stewart v. Capps*[42] in support of their respective positions. In *Stewart*, a passenger sustained injuries in an automobile accident. The insured driver owned and operated the vehicle at the time of the accident. The insured driver's policy had liability limitations of $25,000 per person with a $50,000 per-accident limitation. The uninsured motorist coverage contained the same monetary limitations. The passenger claimed the insured driver and a phantom vehicle were both negligent and caused the accident. The insurer paid out the $25,000 liability policy limit to the passenger, and the passenger subsequently filed suit against the insurer, seeking to recover payment of uninsured motorist benefits under the insured driver's policy. The insurer claimed that under the policy, a setoff provision served to set off payment for the insured's liability against any amount of compensation due for the negligence of the phantom driver. The trial court originally granted summary judgment in favor of the insurer, and the passenger appealed.

The Kansas Supreme Court found that the policy's setoff provision violated K.S.A. 40-284. The opinion notes that "[i]f a setoff provision is to be valid and enforceable, it must be an exclusion set out in K.S.A. 40-284(e)."[43] Because the setoff provision reducing uninsured motorist benefits by the amount paid through liability benefits was not a permissible exclusion or limitation outlined in K.S.A. 40-284(e), it was void.

ACIIE attempts to distinguish its policy's setoff provision from that in *Stewart*. The setoff provision in the ACIIE policy provides that "any amounts otherwise payable for damages under this [uninsured motorist] coverage shall be reduced by all sums paid for the same

---

[42] 802 P.2d 1226 (Kan. 1990).

[43] *Id.* at 1230.

damages" under the liability coverage of the policy.[44] The setoff provision in *Stewart* states, "Any payment under this coverage to or for a covered person will reduce any amount that person is entitled to recover under the Liability Coverage of this policy."[45] In other words, ACIIE argues that its setoff provision is different because its aimed at barring a claimant from recovering twice for the same damages. While ACIIE is correct that the plain language of the setoff provision differs in this respect, the reasoning in *Stewart* still applies to bar this setoff provision in this case. The Supreme Court found the setoff provision in *Stewart* was unenforceable because it was not one of the permissible exclusions or limitations set forth in K.S.A. 40-284(e). The fact that this setoff provision s precludes recovery of the same damages does not make it permissible under K.S.A. 40-284(e). For this reason, the court holds that the setoff provision concerning liability benefits paid to Ms. Ballard is void under the statute.

  The court notes that the defense contained in the pretrial order asks that if the court deems the reduction void, the court determine the reduction is only void as to the statutory minimum of $25,000, as set forth in K.S.A. 40-3107, and is enforceable as to the remaining $75,000 of the uninsured motorist limits. ACIIE does not support this position in response to the summary judgment motion. Indeed, the court could not find any statutory authority or case law that would support the position that the setoff provision is only void up to the $25,000 statutory requirement for uninsured motorist coverage. Rather, K.S.A. 40-284(e) is clear and unambiguous regarding permissible exclusions or limitations for uninsured motorist coverage, and the section does not allow for exclusions based on previously paid liability benefits. For these reasons, the court grants summary judgment in favor of Ms. Ballard on this defense.

---

[44] Insurance Policy at 8, ECF No. 37-6.

[45] *Stewart*, 802 P.2d at 1228.

### IV. Conclusion

The court grants in part and denies in part all parties' summary judgment motions. Material issues of fact preclude summary judgment as to whether Ms. Schone and Ms. Ballard may be entitled to recover uninsured motorist benefits under the provision of the insurance policy governing physical contact by a phantom vehicle with the insured driver's vehicle. The court grants summary judgment in favor of ACIIE on the second way in which Ms. Schone and Ms. Ballard contend they were untitled to uninsured motorist benefits—if a phantom vehicle caused the accident without making physical contact with the insured's vehicle. Ms. Schone and Ms. Ballard lack evidence tending to prove the facts of the accident from a disinterested witness not making a claim under the policy. The court grants summary judgment in favor of Ms. Schone and Ms. Ballard on ACIIE's setoff defense. The policy's setoff provision is void under K.S.A. 40-284(e).

Accordingly,

**IT IS THEREFORE ORDERED** that Automobile Club Inter-Insurance Exchange's (ACIIE) Motions for Summary Judgment Against Ms. Schone and Ms. Ballard (ECF Nos. 34 and 40) are granted in part and denied in part.

**IT IS FURTHER ORDERED** that Jennifer Schone and Deborah Ballard's Motion for Partial Summary Judgment (ECF No. 36) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated this 22nd day of September, 2015, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge
